{¶ 27} I respectfully dissent because there remains a genuine issue of material fact about whether the tractor that killed plaintiff-appellant's decedent constitutes a "motor vehicle" under R.C.4511.01(B).
 {¶ 28} The statute expressly says that a "motor vehicle" means every vehicle propelled or drawn by power * * * except equipment used in construction work and not designed for or employed in general highway transportation * * *." (Emphasis added). Under the statute if the vehicle in question is being used in construction work and also is not designed for or employed in general highway transportation, then it will not qualify as a "motor vehicle."
 {¶ 29} This is a two-prong analysis.
 {¶ 30} I disagree with the majority in its reading of this statute and its conclusion that "the important inquiry is whether the tractor was being used in general highway transportation." The majority apparently believes that the answer to this question alone precludes its classification as a "motor vehicle." I also disagree with the majority in its interpretation of the recent Ohio Supreme Court decision in the case of Muenchenbach v. Preble Cty. (2201), 91 Ohio St.3d 141. Finally, I believe that the majority fails to consider the facts in a light most favorable to the non-moving party, as we are required under Civ.R. 56.
 {¶ 31} The majority believes the first prong of the statute was met. Appellee argues that decedent's movement of a dirt pile, left on the premises from construction work at an earlier date, constitutes use for construction work at the time of his death. Appellee explains that the dirt decedent was moving was there only because of the earlier construction project. The issue is whether use on the date of the accident determines whether the vehicle was "used in construction work."
 {¶ 32} In Muenchenbach the Supreme Court restricted the second prong to the time of the accident. In the case at bar the majority believes that the "used in construction work" portion of the exception is not subject to the same Muenchenbach analysis as the other half of the exception. I disagree. Although the Supreme Court did not expressly apply this restriction of current use to the first prong, the principle the Court enunciated and the reason it gave apply to both prongs. The Court explained the exception as follows:
 {¶ 33} "The city claimed that it was immune from liability pursuant to R.C. Chapter 2744 on the basis that the backhoe was excepted from the definition of motor vehicle under R.C. 4511.01(B) as `other equipment used in construction work and not designed for or employed in general highway transportation,' * * *.
 {¶ 34} "`* * * An exemption cannot be given based on what a vehicle's supposed function should be, but what it was being used for at the time of the incident.' Id., 90 Ohio App.3d at 651, 630 N.E.2d at 383." (Emphasis added.)
 {¶ 35} The Court went on to explain:
 {¶ 36} "It appears to be appellees' overall contention that the limiting or modifying language `used in construction work and not designed for or employed in general highway transportation' signifies an intent to classify `other equipment' on the basis of a vehicle's inherent qualities, or its general, principal, or dedicated use, rather than on the basis of its current actual use. However, the arguments advanced by appellees, and the authorities on which they rely, convince us that the opposite is true. * * *
 {¶ 37} "In contrast, R.C. 4501(B) and 4511.01(B) do not except construction equipment from the definition of `motor vehicle' on the basis of its principal use or dedicated purpose. They do not provide that construction equipment is excepted when used `principally,' `primarily,' or `generally' for construction purposes, or in construction work. They do provide that, in order for other equipment used in construction work to be excepted, it must not be `employed in general highway transportation.' The term `general' is very clearly used not to modify the term `employed,' but to modify `highway transportation.' We believe that if the General Assembly intended for construction equipment to be classified and excepted according to its principal, primary, general, or dedicated use, regardless of how used when it causes damage or injury, then it is incumbent upon the General Assembly to so provide."
 {¶ 38} The legislature did not so provide for either prong of the exception. To be consistent with Muenchenbach, therefore, I believe we must reject a "principal, primary, general or dedicated use" over a "current actual use." The principle the court enunciated applies to both prongs, that is, whether the use is "in construction work" or the use is "in general highway transportation."
 {¶ 39} In the case at bar, the record shows there was no current construction project. Under Civ.R. 56, we must accept the facts in this case in a light most favorable to appellant, the nonmoving party. Applying this rule, reasonable minds could conclude that, since the vehicle currently was moving dirt from one place to another only to distribute it elsewhere on the property, the vehicle was not currently being used in construction work. Whether the tractor, at the time of decedent's death, was a "motor vehicle," therefore, is a genuine issue of material fact.
 {¶ 40} I also feel constrained to address a second issue. In Muenchenbach all the Ohio Supreme Court justices — both the majority and the dissent — agree that the statutory exception "used in construction work and not designed for or employed in general highway transportation" must be read in the conjunctive. As noted by Justice Moyer in his dissent:
 {¶ 41} "The `other equipment' exception in R.C. 4511.01(B) contains two distinct qualifications. The first is that the other equipment must be used in construction. The second qualification, connected to the first by the word `and,' is that the equipment not be designed for or employed in general highway transportation. The conjunctive, `and,' indicates that the language should be read in its entirety * * *." (Emphasis added).
 {¶ 42} According to Muenchenbach, in order for the tractor to fall under the exception and not be a "motor vehicle," it must (1) not be used in construction AND (2) not be employed or designed for general highway transportation when the accident occurred. In order for the exception to operate, both requirements must be met.
 {¶ 43} The majority in this case, however, implicitly reads the exception in the disjunctive, rather than the conjunctive, when it concludes that the answer to whether the vehicle was being used "`in construction' at the time of the incident is not dispositive of whether the tractor falls within the exception * * *." For the majority, because the tractor was not designed for or employed in general highway transportation, the tractor is not a "motor vehicle." Under the statute and Muenchenbach, however, both parts of the exception must be established as true in order for the tractor to be other than a motor vehicle.
 {¶ 44} An affirmative answer to the second prong alone is not dispositive of whether the tractor was a motor vehicle. Whether the vehicle was used "in construction work" must also be answered, and the answer must be determined relative to the time of the accident, rather than to its past use. Because this was not the analysis the trial court used, I would reverse and remand.